## Elizabeth Schisler v. Isaac Null.

*Principal and agent—Trustee—Accounting—Interest—Settlement.*

Defendant paid off certain 10 per cent. mortgages on plaintiff's farm, and was to receive 8 per cent. interest on the amount paid. He also operated the farm for several years as plaintiff's general agent, and received all of the money derived from the proceeds of the farm and from its sale, and paid to plaintiff, from time to time, such sums as she desired for her maintenance, and for the purchase of another farm; and, in a suit brought by her to recover the balance claimed to be due her from the defendant, he claimed that he was to have one-half of what he saved out of the farm by his management, while plaintiff claimed that his compensation was to be the difference between 6 and 8 per cent. interest, at which latter rate he claimed to be able to secure the money to pay off the mortgages. Defendant also claimed that a settlement had been had of all matters in dispute, which plaintiff denied. Defendant in his account did not credit plaintiff with any interest. The court instructed the jury on the question of interest and settlement—

*a*—That, in the absence of any agreement to the contrary, it was the duty of the defendant to apply the money he received on his claim against the plaintiff, which bore 8 per cent. interest, and that when that was paid, if defendant used plaintiff's money in his business, or in any way, he became liable to pay her interest at 7 per cent. until the law of 1887 reducing interest to 6 per cent. took effect, after which he was liable for the lower rate per cent., and that this was true whether his or her theory as to his compensation was correct.

*b*—That the burden was upon the defendant to prove that there had been a "fair and full settlement."

Which instructions are sustained.

Error to St. Joseph. (Loveridge, J.) Argued March 9, 1892. Decided April 8, 1892.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Howell, Carr & Barnard* and *Bishop E. Andrews*, for appellant, contended:

1. The court erred in that portion of his charge wherein he instructed the jury that "the defendant acted as agent or trustee for the plaintiff to save something, if possible, out of the farm for her," because—

   *a*—It assumes that the words "agent" and "trustee" are synonymous, and that their rights, duties, and liabilities are the same, which is not true. An agent is a person employed to transact some business or to manage some affair for another; citing 2 Bouv. Inst. 3; while a trustee is a person in whom some estate, interest, or power in or affecting property of any description is vested for the benefit of another; citing 2 Bouv. Law Dict. 755; and in this case *defendant's* power of attorney must be referred to for the purpose of ascertaining his *status*; citing *Titus v. Mining Co.*, 8 Mich. 215; and that clearly establishes agency and nothing else.

   *b*—No recovery could be had against the defendant as trustee under the declaration, which was in the common counts in *assumpsit*, the general rule being that a trustee cannot be called to an accounting in an action at law, but must be proceeded against by bill in equity; citing 2 Perry, Tr. § 843; and this is especially true where the question of negligence, misconduct, or misuse of the funds on the part of the trustee is complained of, and an attempt is made to charge him with the losses sustained by reason thereof, or the gains resulting to him thereon; citing *Rodman v. Nathan*, 45 Mich. 609; and in equity his compensation can be fixed and determined; citing *Henderson v. Sherman*, 47 Mich. 268; and the only exception is where the trust is terminated, a final accounting had, and a balance struck, when an action at law may be maintained; citing 2 Perry, Tr. § 843.

2. If the account was open and unsettled, the defendant could not be charged interest upon the same without an express or implied agreement to pay it; citing *Sweeney v. Neely*, 53 Mich. 424; *Railway Co. v. People*, 46 Id. 211; *Davis v. Walker*, 18 Id. 26; 11 Amer. & Eng. Cyc. Law, 384, note 3.

3. The evidence establishes the fact that defendant was only a bailee or depositee of the various sums of money received by him, and when the money is so held interest cannot be charged; citing *Haswell v. Bank*, 26 Vt. 100; *Duncan v. Magette*, 25 Tex. 245.

4. The distinction between agent and trustee is important in this case, as affecting defendant's liability for interest. If he is chargeable as trustee, he is liable for legal interest if he merged

plaintiff's money with his own, used it in his private business, deposited it in his own name, or neglected for an unreasonable time to invest it; citing 1 Perry, Tr. § 464; *King v. Talbot*, 40 N. Y. 86; while as agent he is only liable to pay interest upon an express agreement to pay it, or an implied one arising from an accounting, the striking of a balance, and a demand for payment, or where he has grossly misapplied the principal's money; citing Story, Agency, §§ 205, 221; *Williams v. Houghtaling*, 3 Cow. 87 (note).

*R. R. Pealer* and *O. F. Bean,* for plaintiff.

MORSE, C. J. Plaintiff sued defendant in *assumpsit,* and filed a bill of particulars stating her account. Defendant pleaded the general issue, gave notice of set-off and of the defense of the statute of limitations, and also filed a bill of particulars of his account. The jury found a verdict in favor of the plaintiff of $332.42, and judgment passed accordingly.

The undisputed facts are, in substance, that the plaintiff, a very old and illiterate German woman, in the year 1877, had all her property invested in a farm of 120 acres near the village of Three Rivers, in this State. This farm was in the name of her son, Henry W. Whitman. The farm was worth between $5,000 and $6,000. The son had placed three mortgages upon it, aggregating about $4,000, and bearing interest at 10 per cent. These mortgages were owned by one Jeremiah Gardner, and he had commenced foreclosure upon two of them. There was also a sheriff's levy upon the premises for the sum of about $60, and the land was about to be sold upon it.

The plaintiff had known the defendant, who was a man of means, a great many years, and applied to him to help her save the property. An arrangement was entered into between them that defendant should take up these incumbrances upon the property, and charge her 8 per cent. interest for the money, and July 2, 1877, the plaintiff executed to him a power of attorney to receive and

collect all moneys due her from her son. Defendant then took charge of plaintiff's affairs. On July 20, 1877, he secured from Whitman, plaintiff's son, payable to plaintiff, his note for $3,040, with interest at 7 per cent., secured by a fourth mortgage upon the farm. He also took charge of the farm, to operate it for the benefit of plaintiff, allowing Whitman $400 per annum for the use of it, such rental sum to be applied on his note and mortgage to his mother. It was further agreed that all the surplus crops of the farm should be disposed of by defendant, and credited to plaintiff, the son staying on the farm and working it. In September, 1880, Whitman deeded the farm to his mother. Defendant continued to operate and manage the farm until April 20, 1885, when it was sold to one Houke for $7,000. July 26, 1881, defendant procured the money, and settled with Gardner, and the mortgages and sheriff's certificate of sale were duly assigned to him. From the time of the execution of the power of attorney up to December 19, 1885, defendant acted as the general agent of plaintiff, receiving all the money that came from the proceeds of the farm and the sale of it, and paying to plaintiff, from time to time, such sums as she desired for her maintenance.

The defendant claimed upon the trial that on December 19, 1885, there was a full settlement between him and the plaintiff, her son being present with her, and doing the figuring for her, and that a balance was determined and agreed upon for $2,200 due from defendant to plaintiff, and, at plaintiff's request, he paid to the son, who wanted to go west to look for another farm, $25. This settlement is denied by plaintiff.

After this alleged settlement, plaintiff purchased a farm near Three Rivers, and defendant, January 8, 1887, paid for plaintiff on this farm $2,075. There were other

dealings between the parties up to July or August of that year, by which defendant claimed he overpaid the balance found due at this alleged settlement, and that, at the time of the trial, the plaintiff was owing him $88.06 with interest, $12.80. In his bill of particulars, he also put in an item of $500 for services in managing the farm, etc., for 10 years, making his total balance against plaintiff $600.86.

Defendant claimed in his testimony on the trial that he was to have one-half of what he saved out of the farm by his management. Plaintiff denied this, and claimed that defendant's compensation was to be the difference between 6 and 8 per cent. upon the moneys invested by him to pay the Gardner claims; that defendant said he could get the money for 6 per cent., and would charge plaintiff 8 per cent., and that this 2 per cent. would pay him for his services. The plaintiff's case ignored the settlement, and her contention was that defendant should be allowed for all money expended by him, with interest, and that she should be credited with interest for all moneys received by him from her estate.

The defendant in his settlement of account did not credit plaintiff with any interest, and contended that she was not entitled to any. And it is alleged, as one of the principal errors, that the court submitted the case to the jury upon the theory that the defendant was a trustee of the plaintiff, and as such bound to account to her for interest upon all moneys received from her or her estate. The court said, in relation to interest:

"It is agreed that defendant was only to be allowed 8 per cent. on the money he advanced to pay the Gardner obligation. This did not make it payable annually, and did not give him the right to have compound interest; and this agreement of interest at the rate of 8 per cent. only applies to the Gardner claims. In the absence of any agreement to the contrary, it was the duty of the

defendant to apply the money he received on the claim
he had against plaintiff, and when his claim was paid,
if he used her money in his business, or in any way,
then he became liable to her for the interest on it at 7
per cent. until September 28, 1887, that being the time
when the new law took effect, which changed the rate of
interest from 7 to 6 per cent., and at 6 per cent. after
that time. It was the duty of the defendant to give the
plaintiff credit for all items of interest·as well as other
items. The utmost good faith was demanded of the
defendant in his dealings with plaintiff."

This charge was correct, upon any theory of the case.
If the defendant was to have one-half of the amount he
saved by his management out of the farm, for his ser-
vices, it would be necessary, in ascertaining how much
he had saved, to strike a balance between his receipts
and expenditures; and, if he was allowed interest on the
moneys expended by him, in arriving at said balance, the
plaintiff ought also to be allowed interest on the moneys
received by him from the products of the farm, and the
sale of the farm itself, for the time such moneys remained
in his hands, unless by express agreement it was other-
wise provided. Under plaintiff's theory, she was certainly
entitled to it. And the fact that the circuit judge,
which is assigned as error, said, in another part of his
charge, that "the defendant acted as agent or *trustee*
for the plaintiff to save something, if possible, out of the
farm for her," did not, in our opinion, prejudice the
defendant's case with the jury. It was immaterial, so
far as this interest was concerned, whether defendant was
agent or trustee; the instructions in regard to such inter-
est were correct, in whatever capacity he acted.

It is also alleged that the court erred in charging the
jury that the burden was upon defendant to prove that
there had been a "fair and full settlement." The court
had before this very fairly instructed the jury in relation
to this claim of settlement, and that, if they found such

settlement, they would only have to consider the transactions and dealings between the parties after its date. We do not think the use of the word "full" led the jury to believe that the settlement, if found, must have been one that concluded any further dealings between the parties, as is inferred by defendant's counsel. Such counsel also object to the use of the word "fair." The argument is that there was no claim on the trial that the settlement, if any was made, was not a fair one, but that plaintiff simply contended that there was none, and that this charge placed the burden upon the defendant of not only proving a settlement, but also its fairness, when such fairness was not impeached. The court had before this correctly said to the jury that this settlement must be shown to have been one that the parties understood and agreed to, —that their minds came together upon it,—and that they adjusted the accounts, and struck a balance, and that they agreed that such balance was the amount to be paid by the defendant to the plaintiff. The very fact that there was no fraud claimed against this settlement, and that the plain issue was whether it took place, satisfies us that the defendant was not harmed by the instructions complained of.

We find no errors in the admission of testimony.

The judgment is affirmed, with costs.

The other Justices concurred.